## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JAMES F. REDDEN, | ) | CASE NO.1:22-CV-00694-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| WARDEN KENNETH BLACK, | ) | |
| ATTORNEY GENERAL OF THE | ) | **REPORT AND RECOMMENDATION** |
| STATE OF OHIO, | ) | |
| | ) | |
| Defendants, | ) | |

### I.      Introduction

James F. Redden ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254.

Petitioner is an Ohio prisoner who is currently serving an aggregate prison term of seven and

a half years[1] for illegal manufacture of methamphetamine, illegal assembly or possession of

chemicals for manufacture of drugs, and aggravated trafficking in methamphetamine. (ECF

No. 1, PageID #: 2; ECF No. 6-1, PageID #: 374). He asserts ten grounds for relief. (ECF No.

1, PageID #: 18–53). Warden Kenneth Black and the Attorney General of the State of Ohio

("Respondents") filed a return of writ on August 3, 2022. (ECF No. 6). Petitioner filed a

traverse on October 28, 2022. (ECF No. 9).

This matter was referred to me under Local Rule 72.2 to prepare a report and

recommendation on Petitioner's petition and other case-dispositive motions. Because

---

[1] Petitioner states that he is serving an aggregate prison term of nine and a half years.
(ECF No. 1, PageID #: 2). However, he was resentenced to seven and a half years, as will be
discussed below. (See ECF No. 6-1, PageID #: 374).

Petitioner has presented only procedurally defaulted and meritless claims, I recommend that

the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.    Relevant Factual Background

The Ohio Court of Appeals for the Fifth Appellate District set forth the following facts[2]

on direct appeal:

> {¶2} This case arose in September 2018 when Detective Brian
> Evans received a complaint that methamphetamine was
> manufactured at 506 W. Tenth Street, Ashland, by appellant.
>
> {¶3} Evans' first step was to contact METRICH, an inter-agency
> narcotics investigation unit, for information about purchases of
> Sudafed and similar cold medicine. Evans accessed NPlex, a law
> enforcement database cross-referencing purchases of Sudafed
> and cold medicines containing Pseudoephedrine, a component in
> the manufacture of methamphetamine. Evans found two
> purchases by appellant, both at area Wal-Mart locations, on
> September 15 and October 13.
>
> {¶4} Evans launched an investigation of appellant, his
> associates, and the address where appellant was staying: 506 W.
> Tenth Street. Evans learned Rhonda Shanks was a frequent
> visitor to the address, and running her name through NPlex
> yielded several purchases of Pseudoephedrine on October 3.
> Evans observed "Skip" Shenberger, another of appellant's
> associates, with appellant at a local Wal-Mart on October 27.
> The same day, NPlex revealed Shenberger purchased
> Pseudoephedrine. Surveillance at 506 W. Tenth Street indicated
> Barbara Baker also stopped by and dropped off a small bag to
> appellant.
>
> {¶5} During this surveillance, police observed appellant walk to
> the abandoned house next door—502 W. Tenth Street—with its
> owner, Donald Bratton. Bratton testified at trial that appellant
> approached him about buying the property, even though it was
> not for sale and was in a state of "major disrepair." Nevertheless,
> appellant was interested in buying it, and agreed to pay Bratton
> $2500 on land contract. Bratton had placed a padlock on the door
> of the house. On the day they were observed by police, Bratton
> brought appellant over to the property to point out various issues.

---

[2] The facts found by the appellate court of record "shall be presumed to be correct," and
the petitioner has "the burden of rebutting the presumption of correctness by clear and
convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th
Cir. 1998).

{¶6} Based upon his investigation into the meth operation, Evans prepared an affidavit for a search warrant to search 506 W. Tenth Street including appellant's vehicle, boat, cell phone, and person. Police intended to serve the search warrant on October 29, 2018, but extra caution was required due to the hazardous nature of chemicals used in methamphetamine preparation. As police watched the house, they noticed appellant go next door with Bratton and decided to wait to serve the warrant until the next day.

{¶7} While in the neighborhood the next day, Evans unexpectedly encountered appellant walking a few blocks away from the residence. Evans and another detective stopped appellant, spoke to him, and advised they had a search warrant for his residence. Appellant and Evans spoke briefly. Appellant agreed to accompany detectives back to the residence and the search warrant was executed.

{¶8} The search of 506 W. Tenth Street—the residence where appellant lived with Eugene Milkey—yielded aluminum foil, Pseudoephedrine pills, a digital scale, a funnel, filters, Ziploc baggies, gloves, suspected narcotics, lithium strips, lithium batteries, and cold packs. Evans testified these items are consistent with the "cooking" of methamphetamine.

{¶9} With Britton's permission, police also searched the abandoned property at 502 W. Tenth Street. Before they could search, Britton realized the padlock on the property was not his. Police spoke to appellant and learned he had placed his own padlock on the property. At 502 W. Tenth Street, police found a Rite-Aid receipt with appellant's name on it, a cold-pack box, a Pseudoephedrine blister pack, an aluminum casing for a lithium battery, a lithium strip, blue rubber gloves, and two lighter-fuel containers. Evans testified these items are also consistent with the "cooking" of methamphetamine.

{¶10} Detective Richard Clapp of the Mansfield Police Department was called in to assist in cleanup of hazardous materials found at 502 and 506 W. Tenth Street. Clapp testified the materials are consistent with the preparation and manufacture of methamphetamine by the "shake and bake" method in which methamphetamine is prepared in a container such as a Gatorade bottle.

{¶11} Appellee called several of appellant's accomplices as trial witnesses. Rhonda Shanks testified she has known appellant for a few years and he asked her to help him find a place to live where he could "cook." Shanks connected appellant with Eugene Milkey, who permitted appellant to live in a bedroom in his residence at 506 W. Tenth Street. Appellant provided Shanks

and Milkey with methamphetamine to smoke. Shanks testified appellant asked her to purchase Pseudoephedrine for him and she agreed to do so in exchange for meth. Shanks testified she bought Sudafed at Wal-Mart, Rite-Aid, and CVS in October 2018. Shanks also testified that appellant once asked her to hold a bottle with a hose attached.

{¶12} Milkey testified appellant provided him with a white substance which he smoked through aluminum foil.

{¶13} "Skip" Shenberger testified he met appellant at Milkey's house and got high with him. Appellant provided Shenberger with an unknown yellow substance; Shenberger didn't know what it was but asked to buy $100 more of it. Shenberger also purchased Sudafed from Wal-Mart for appellant.

{¶14} Barbara Baker is familiar with appellant and occasionally allowed him to borrow her vehicle. She purchased Claritin-D for appellant at Wal-Mart and CVS.

{¶15} A Wal-Mart witness provided security videotape of several of the transactions in which Pseudoephedrine was purchased by Shanks on September 17, by Baker on October 13, by Shenberger on October 27, 2018, and by an unknown male on September 15.

{¶16} A B.C.I. forensic scientist testified that appellee's Exhibit 1, a plastic baggie containing residue, tested positive as methamphetamine.

{¶17} Appellant called one witness on his behalf, Detective Wayne Liggett of the Richland County Sheriff's Office. Liggett was not involved in the investigation but assisted in the cleanup of hazardous materials generated by the preparation of methamphetamine. Liggett acknowledged that a report he prepared misidentified appellant as James Story, which Liggett explained as a clerical error.

{¶18} Appellant was charged by indictment with one count of illegal manufacture of drugs [methamphetamine] pursuant to R.C. 2925.04(A), a felony of the second degree [Count I]; illegal assembly or possession of chemicals for manufacture of drugs pursuant to R.C. 2925.041(A), a felony of the third degree [Count II]; and one count of aggravated trafficking in drugs [methamphetamine] pursuant to R.C. 2925.03(A)(1), a felony of the fourth degree [Count III].  Appellant entered pleas of not guilty.

{¶19} On December 21, 2018, appellant filed a motion to suppress his statements "as a result of un-mirandized custodial

4

interrogation." Appellee responded with a memorandum in opposition. The matter proceeded to an evidentiary hearing on January 28, 2019, and the trial court gave the parties an opportunity to file post-hearing memoranda. By Judgment Entry filed March 1, 2019, the trial court granted the motion to suppress in part and overruled it in part. Appellant's statements to Evans when he was stopped on the street were suppressed; appellant's later statements at the residence and at the Ashland County Jail were not suppressed.

{¶20} The matter proceeded to trial by jury on April 30, 2019, concluding May 2, 2019, and appellant was found guilty as charged. Sentencing was deferred pending a pre-sentence investigation (P.S.I), which has been filed under seal for our review.

{¶21} Appellant appeared for sentencing on June 24, 2019. The trial court imposed a prison term of 5 years upon Count I, 2 years upon Count II, and 18 months upon Count III. The trial court further noted appellant committed the instant offenses while on post-release control, thus an additional 12-month sentence was imposed for the P.R.C. violation. The prison terms are to be served consecutively for a total aggregate sentence of nine and a half years.

*State v. Redden*, No. 19-COA-026, 2020-Ohio-878, ¶¶ 2–21 (5th Dist. Ohio Mar. 6, 2020).

## III.    Relevant State Procedural History

### A.  Indictment

Petitioner was indicted on November 9, 2018 for three counts:

> Count1: Illegal Manufacture of Drugs, a felony of the second degree, in violation of Ohio Revised Code § 2925.04(A);
>
> Count 2: Illegal Assembly or Possession of Chemicals for Manufacture of Drugs, a felony of the third degree, in violation of Ohio Revised Code § 2925.041(A); and
>
> Count 3: Aggravated Trafficking in Drugs, a felony of the fourth degree, in violation of Ohio Revised Code § 2925.03(A)(1).

(ECF No. 6-1, PageID #:177–78). At arraignment, Petitioner pleaded not guilty to all charges.

(ECF No. 6-1, PageID #: 179).

### B.  Suppression Hearing

Petitioner moved to suppress statements he made to law enforcement on December 21, 2018. (ECF No. 6-1, PageID #: 185–88). The State of Ohio filed an opposition brief on January 25, 2019. (ECF No. 6-1, PageID #: 189–202). On January 28, 2019, the trial court held an evidentiary hearing and ordered the parties to file supplemental briefing on *Missouri v. Seibert*, 542 U.S. 600 (2004). The trial court ultimately granted in part and denied in part Petitioner's motion. (ECF No. 6-1, PageID #: 214–16). The court suppressed all statements Petitioner made to law enforcement before Petitioner was Mirandized and denied the motion for all Petitioner's statements made after the warning. (ECF No. 6-1, PageID #: 214–16). It also distinguished *Seibert* from the facts of the case:

> *Seibert* is factually distinguishable from the present case, and as Justice Kennedy noted in the plurality decision, the two-step interrogation strategy was found to create a situation that prevented a *Miranda* warning from curing post-Miranda custodial statements due to the nature of the lengthy, exhaustive interrogation that occurred prior to the *Miranda* warning being given. Planned, coordinated and exhaustive interrogation prior to the administration of a *Miranda* warning did not occur in this case.
>
> Although there is no recording of the *Miranda* warning administered to the Defendant, all the evidence and testimony presented during the suppression hearing supported a finding that the *Miranda* warning was effectively communicated to and understood by the Defendant.

(ECF No. 6-1, PageID #: 214–15). Based on this reasoning, the court found that *Seibert* was inapplicable to the case. (ECF No. 6-1, PageID #: 214–15).

## C. Trial, Guilty Verdict, and Sentencing

The matter proceeded to a jury trial on April 30, 2019, where Petitioner was represented by counsel. *Redden*, 2020-Ohio-878, at ¶ 20. The jury found Petitioner guilty of all counts. *Id.* On June 24, 2019, the trial court sentenced Petitioner to five years for Count 1, two years for Count 2, and eighteen months for Count 3. (ECF No. 6-1, PageID #: 233–35). Petitioner was also sentenced to one additional year, pursuant to Ohio Revised Code § 2967.28, since he committed the instant offense while he was on post-release control. (ECF No. 6-1, PageID

#: 235). The court ordered Petitioner to serve the sentences consecutively, or for an aggregate sentence of nine and a half years. (ECF No. 6-1, PageID #: 231–37).

### C.  Direct Appeal

Petitioner filed a notice of appeal with the Fifth District of the Ohio Court of Appeals on July 1, 2019 and an appellate brief on October 15, 2019. (ECF No. 6-1, PageID #: 238 (notice), 240–54 (brief)). In his appeal, he alleged three assignments of error:

> 1. Whether the trial court erred in its determination of Appellant's motion to suppress.
>
> 2. Whether Appellant's trial counsel rendered ineffective assistance of counsel.
>
> 3. Whether the trial court erred by sentencing Appellant on counts which were allied offenses of similar import and should have merged for sentencing purposes.

(ECF No. 6-1, PageID #: 244). The State filed an opposition brief on November 4, 2019. (ECF No. 6-1, PageID #: 256–71).

On March 6, 2020, the appellate court affirmed the trial court's decision in part, reversed in part, and remanded the case for resentencing. *Redden*, 2020-Ohio-878, at ¶ 64. The court overruled Petitioner's first assignment of error, finding that the trial court did not err in overruling the motion to suppress in part and granting it in part. (ECF No. 6-1, PageID #: 283). However, it sustained the second assignment of error and remanded the case to the trial court to determine whether Petitioner was indigent for the purpose of avoiding the mandatory fees imposed by the relevant statutes. (ECF No. 6-1, PageID #: 286). Likewise, the court sustained Petitioner's third assignment of error and vacated the sentences for Counts One and Two, remanding the case to the trial court for resentencing. (ECF No. 6-1, PageID #: 293–94).

### D.  Supreme Court of Ohio Appeal

Following the appellate court's decision, Petitioner filed a notice of appeal and a motion for leave to file the memorandum in support of jurisdiction and brief out of time with the Supreme Court of Ohio on June 2, 2020. (ECF No. 6-1, PageID #: 296–97 (notice), 298–99

(motion)). The Supreme Court granted Petitioner's motion for leave and permitted him to file his memorandum within thirty days of its judgment entry. (ECF No. 6-1, PageID #: 300). But Petitioner failed to file a brief within thirty days, so the court dismissed the case on July 21, 2020. (ECF No. 6-1, PageID #: 301). On September 21, 2020, Petitioner filed a notice of appeal and motion for leave to file a delayed appeal to the Supreme Court, and the court granted his motion, ordering him to file a memorandum in support of jurisdiction within thirty days of its judgment entry. (ECF No. 6-1, PageID #: 302–08 (notice of appeal and motion), 352 (judgment entry)). Petitioner filed his memorandum in support of jurisdiction on November 2, 2020. (ECF No. 6-1, PageID #: 353–67). In the memorandum, Petitioner alleged the following propositions of law (sic):

> Proposition of Law No. 1: Whether Trial Court erred in its determination of Appellant's Motion to Suppress.
>
> Proposition of Law No. 2: Appellate Counsel was ineffective for not bringing up the Ineffectiveness of Trial Counsel for not bringing all issues in the suppression hearing and not attempting to have the ruling applied to the physical evidence that was not taken with a proper search warrant.

(ECF No. 6-1, PageID #: 362–66). The Supreme Court of Ohio declined to accept jurisdiction of the appeal on January 22, 2021. (ECF No. 6-1, PageID #: 369).

### E. Resentencing

Following the Ohio Court of Appeals' order remanding the case for resentencing, the trial court sentenced Petitioner to an aggregate prison term of seven and a half years on April 20, 2022. (ECF No. 6-1, PageID #: 370, 374). The court merged Counts One and Two, and the State elected to proceed with sentencing for Count One. (ECF No. 6-1, PageID #: 373). Thus, the court sentenced Petitioner to five years for Count One and eighteen months for Count Three, which was to be served consecutively with Count One. (ECF No. 6-1, PageID #: 373). Petitioner's fine for Count One was waived. (ECF No. 6-1, PageID #: 373). The court also

ordered Petitioner to serve one year for violating the terms of his post-release control, to be served consecutively with Counts One and Three. (ECF No. 6-1, PageID #: 373–74).

On May 21, 2020, Petitioner filed a notice of appeal and requested the assignment of counsel. (ECF No. 6-1, PageID #: 377). The trial court found Petitioner indigent for the purpose of obtaining counsel and appointed Attorney Shantell George for the purpose of appeal in that case. (ECF No. 6-1, PageID #: 379). On August 24, 2020, Attorney George moved to withdraw as counsel. (ECF No. 6-1, PageID #: 380–82). Petitioner also filed a pro se motion to remove Attorney George as counsel on November 6, 2020, and the Ohio Court of Appeals granted his motion and denied Attorney George's motion as moot. (ECF No. 6-1, PageID #: 383–84, 385). The court ordered Petitioner to file a brief no later than December 18, 2020. (ECF No. 6-1, PageID #: 385). On February 17, 2021, the appellate court dismissed the appeal for want of prosecution. (ECF No. 6-1, PageID #: 386).

### F. Application for Reopening

Petitioner filed an application to reopen his direct appeal on October 15, 2020. (ECF No. 6-1, PageID #: 387–95). In the application, Petitioner alleged the following assignments of error (sic):

> FIRST ASSIGNMENT OF ERROR: Appellate counsel failed to raise that Trial Court incorrectly allowed the State to introduce inadmissible evidence of other past bad acts, in violation of Evidence Rule 404(B), which served to prejudice the jury and violate Appellant's 5th, 6th, and 14th Amendment Rights of the U.S. Constitution. Trial Counsel objected to the playing of the CD that had the evidence of past bad acts on it, but he objected to the playing of the CD to the jury on the grounds of hearsay.

> SECOND ASSIGNMENT OF ERROR: Appellate counsel failed to raise that Trial Counsel was ineffective for allowing [approximately] five minutes of varying inadmissible and prejudicial statements, there was also statements of inadmissible hearsay that was played to the jury; all statements violated Evidence Rule 404(B), the inadmissible, [prejudicial] hearsay is a violation of Evidence Rule 802. These statements and the playing of these recorded statements from a CD deprived

Appellant of his 5th, 6th, and 14th Amendment Rights guaranteed by the U.S. Constitution.

THIRD ASSIGNMENT OF ERROR: Appellate Counsel was ineffective for not raising the error that the convictions of Illegal Manufacture of Drugs 2925.04 and Illegal assembly or possession of Chemicals for Manufacture of Drugs, 2925.041 was based on insufficient evidence to sustain a conviction. The trial court erred in denying Appellants Crim.R.29 Motion, or in the alternative was against the Manifest Weight of the Evidence. Appellant was deprived of the Due Processes of Law that are guaranteed by the 5th and 14th Amendments of the U.S. constitution and Article 1, Section 10 of the Ohio Constitution.

FOURTH ASSIGNMENT OF ERROR: Appellate counsel was ineffective for not raising the ineffectiveness of my trial counsel for his performance in my suppression hearing; his actions violated my 5th, 6th, and 14th Amendment rights to the U.S. Constitution, and he failed to preserve and protect my 4th Amendment Right to privacy and to free from illegal searches of person and property.

FIFTH ASSIGNMENT OF ERROR: Appellate Counsel was ineffective for not raising the ineffectiveness of my trial counsel when he did not present the 4th Amendment violations of my Constitutional Rights to be secure in my person, property[] against unreasonable searches to the Court in the form of a suppression hearing, regarding the illegal search of 502 W. 10th Street, Ashland, Ohio.

SIXTH ASSIGNMENT OF ERROR: Appellate Counsel was ineffective for not citing the error of the violation of my 5th and 14th Amendment Rights when the court abused its discretion and had me appear in front of the jury in electronic restraints.

SEVENTH ASSIGNEMNT OF ERROR: [Appellate] Counsel was ineffective for not citing the error of Prosecutorial Misconduct, which denied Appellant of his rights guaranteed by the 5th, 6th and 14th Amendments of the U.S. Constitution and Article I, Sec.10 of the Ohio Constitution; also denying Appellant his right to a fair trial.

EIGHTH ASSIGNEMNT OF ERROR: Appellate [counsel] was ineffective for not citing the ineffectiveness of Trial Counsel for not contesting the validity[,] and not raising the issues of impropriety of the Affidavit for the search warrant for 506 W. 10th Street, Ashland, Ohio.

(ECF No. 6-1, PageID #: 388–93).

The Court of Appeals denied the application on December 15, 2020. (ECF No. 6-1, PageID #: 470–78). First, the court found that the application was untimely and that Petitioner failed to establish good cause for his untimeliness. (ECF No. 6-1, PageID #: 473). Rule 26(B) of the Ohio Rules of Appellate Procedure requires appellants to file an application to reopen an appeal within ninety days of the appellate court's judgment entry. However, Petitioner filed his application 223 days after the appellate court's March 6, 2020 judgment date. (ECF No. 6-1, PageID #: 473). The appellate court noted that Petitioner "offer[ed] no explanation or basis for a finding of good cause for his untimely filing." (ECF No. 6-1, PageID #: 474).

Second, the court found Petitioner's application meritless. (ECF No. 6-1, PageID #: 474). The court rejected Assignments of Error One and Two, which alleged appellate counsel failed to raise trial counsel's allowance of evidence of Petitioner's bad acts and inadmissible prejudicial evidence including hearsay at trial. (ECF No. 6-1, PageID #: 474–75). The appellate court noted that Petitioner's trial counsel objected to the admission of this evidence, and the trial court reviewed the claim. (ECF No. 6-1, PageID #: 474–75). As trial counsel made an effort to exclude the evidence, the appellate court found he exercised sound trial strategy under *Strickland v. Washington*, 466 U.S. 668, 689 (1984). (ECF No. 6-1, PageID #: 475). The court therefore found Assignments of Error One and Two meritless. (ECF No. 6-1, PageID #: 474–75).

Next, the appellate court rejected Assignment of Error Three, which alleged appellate counsel was ineffective for failure to argue that convictions for Counts One and Two were based on insufficient evidence, or alternatively, against the manifest weight of evidence. (ECF No. 6-1, PageID #: 475). The court noted the evidence supporting the convictions included physical evidence found in Petitioner's home and testimony from multiple witnesses detailing his involvement in the offenses. (ECF No. 6-1, PageID #: 476). Based on this evidence, the court found it was "unlikely that an appellate court would have determined the trial court had

lost their way in finding the appellant guilty based on the sufficiency of the evidence." (ECF No. 6-1, PageID #: 476). The court held that appellate counsel therefore did not act ineffectively by failing to raise this claim. (ECF No. 6-1, PageID #: 476).

The court also found Assignments of Error Four, Five, Six, and Eight meritless. (ECF No. 6-1, PageID #: 476–77). These grounds argued that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel claims related to the suppression hearing and the search of 502 W. Tenth Street and for failing to cite Petitioner's appearance before the jury with visible restraints. (ECF No. 6-1, PageID #: 476). The appellate court noted that the court had already ruled upon the issues related to the suppression ruling and Petitioner's statements to police. (ECF No. 6-1, PageID #: 476). Further, it found that the outcome of the case likely would not have changed if trial counsel had raised the issues Petitioner noted or if he had not been in visible restraints. (ECF No. 6-1, PageID #: 477). Thus, the court found these assignments of error meritless. (ECF No. 6-1, PageID #: 477).

Finally, the Court rejected Assignment of Error Seven, which claimed that appellate counsel was ineffective for failing to cite prosecutorial misconduct as an error on direct appeal. (ECF No. 6-1, PageID #: 477). The court rejected the claim, reasoning that even if it "accept[ed] these actions as incompetent acts by counsel, it is unlikely that another outcome would have resulted at trial due to the weight of the other evidence presented." (ECF No. 6-1, PageID #: 477).

Upon the appellate court's denial of his application to reopen his case, Petitioner attempted to appeal the decision to the Supreme Court of Ohio. (ECF No. 1, PageID #: 7–10). However, the clerk of the Ohio Supreme Court refused to file the notice of appeal or memorandum in support of jurisdiction for failure to include the filing fee or affidavit of indigence. (ECF No. 1, PageID #: 10). Petitioner states that his filing was returned to him.

(ECF No. 1, PageID #: 10).  Thereafter, he failed to pursue his application for reopening any

further. (ECF No. 1, PageID #: 11).

### G.  Federal Habeas Corpus Petition

Petitioner petitioned pro se that this Court issue a writ of habeas corpus on April 28,

2022. (ECF No. 1). Petitioner asserted the following grounds for relief (sic):

> **Ground One:** Appellate counsel was ineffective for not raising
> the ineffectiveness of my trial counsel when he did not present
> the 4th Amendment violations of my Constitutional Rights to be
> Secure in my person, property .... against unreasonable searches
> to the court in the form of a suppression hearing; regarding the
> illegal search of 502 W. 10th Street, Ashland, Ohio.
>
> **Ground Two:** Appellate Counsel failed to raise that the trial
> court improperly allowed the State to introduce inadmissible
> evidence of "other past bad acts" in violation of Ohio Evidence
> Rule 404(B)(Ohio's Evidence Rules are fashioned basically from
> Federal Evidence Rules), this was the playing of a CD - Exhibit
> 48 of the evidence presented at Petitioners trial, which served to
> prejudice the jury and violate Petitioner's 5th, 6th, and 14th
> Amendment Rights of the U.S. Constitution, nor did he raise the
> ineffectiveness of trial counsel for not attacking the statement
> (Exhibit 48) as a "testament of bad acts done prior to the
> indictment period." All these CD's played to the jury also
> contained hearsay, because theses CD's were recorded
> conversations with statements that are not exclusively
> Petitioners statements, and statements in the other half of the
> conversation stating statements of OTHER people's statements.
> None of the recorded conversations played to the jury should
> have been played to the jury. SPECIFICALLY, Audio Exhibit
> 48. This was an abuse of power and discretion of the court.
>
> **Ground Three:** Appellate Counsel failed to raise that trial
> counsel was ineffective for allowing five minutes of varying
> inadmissible and prejudicial statements [from] witness Rhonda
> Shanks and the playing of a CD of her initial interview that were
> about past bad acts and was also inadmissible hearsay that was
> played to the jury; all statements violated Ohio Evidence Rule
> 404(B). The Inadmissible hearsay is a violation of Ohio
> Evidence Rule 802. (Ohio's evidence Rules are fashioned
> basically from Federal Evidence Rules). Which served to
> prejudice the jury and violate Petitioner's s•h, 6th, and 14th
> Amendment Rights of the U.S. Constitution, violating my Due
> Process and my right to a fair trial. All these CD's played to the
> jury also contained hearsay, because theses CD's were recorded
> conversations with statements that are not exclusively

Petitioners statements, and statements in the other half of the conversations stating statements of OTHER people's statements. None of the recorded conversations played to the jury should have been played the jury. This was an abuse of power and discretion of the court.

**Ground Four:** Appellate counsel was ineffective for not citing the error of the violation of my 5th and 14th Amendment Rights when the courts abused its discretion and had me appear in front of the jury in electronic restraints visible to the jury when it was ruled by the court in answer to a prior motion that I was to be able appear without restraints. Trial counsel was also ineffective for not raising this issue to the court during trial and addressing the issue of prejudice by polling the jury to ascertaining the amount of prejudice to the jury[.]

**Ground Five:** Appellate counsel was ineffective for not citing the error of Prosecutorial Misconduct, which denied Petitioner of his rights guaranteed by the 5th, 6th, and 14th Amendments of the U.S. Constitution and Article 1, Sec. 10 of the Ohio Constitution; also denying Petitioner to a fair trial.

**Ground Six:** Appellate counsel was ineffective for not citing the ineffectiveness of trial counsel for not contesting the validity of the Affidavit for search warrant, and not raising the issues of the improprieties of the Affidavit for search warrant for 506 W. 10th Street, Ashland, Ohio.

**Ground Seven:** Appellate counsel was ineffective for not raising the error that the conviction of Illegal Manufacturing of Drugs, O.R.C. 2925.04(A), Illegal Assembly of Chemicals for Manufacture of Drugs O.R.C. 2925.041(A), and Aggravated Trafficking in Drugs, O.R.C. 2925.03(Al(1) was based on insufficient evidence to sustain conviction. The trial court erred in denying Petitioners Crim.R. 29 Motion, or in the alternative; was against the Manifest Weight of the Evidence, Petitioner was deprived of the Due-Processes of Law that are guaranteed by the 5th and 14th Amendments of the U.S. Constitution.

**Ground Eight:** Appellate counsel was ineffective for not raising the ineffectiveness of my trial counsel for his performance in Petitioners suppression hearing; his actions violated my 5th, 6th, and 14th Amendment Rights to the U.S. Constitution, and trial counsel failed to preserve and protect Petitioners 4th Amendment right to privacy and the right to be free from illegal searches of person and property.

**Ground Nine:** Trial Court erred in its determination of Petitioner's ultimate issue raised in the Motion to Suppress - the

[Seibert] violation (Missouri v. [Seibert] 524 U.S. 600, 124 S.Ct. 2601 (2004)[.]

**Ground Ten:** Appellate Counsel was ineffective for not bringing up the ineffectiveness of trial counsel for not bringing up all issues in the suppression hearing and not attempting to have the judge's ruling applied to the physical evidence taken from 502 W.l0th Ashland, Ohio, without a proper warrant. This is an issue of the determination of the court's ruling also, and an issue of the application of this ruling to ALL evidence taken on the day of the un-mirandized conversation[.]

(ECF No. 1, PageID #: 18–52).

## V.    Legal Standards

### A.  Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Sexton v. Wainwright*, 968 F.3d 607, 609–10 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1064 (2021). There is no dispute that Petitioner timely filed his federal habeas corpus petition within the 28 U.S.C. § 2244(d) one-year statute of limitations.

### B.  Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Ashland County sentenced Petitioner, and Ashland County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review a state court's decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### D. Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007) (citing 28 U.S.C. § 2254(b) and (c)). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F. Supp. 2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id.* (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state

law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### E. Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732–33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas

corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004)

18

("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### F. AEDPA Standard of Review

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only

the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that

20

the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.

## VI.  Discussion

### A.  Grounds One through Eight and Ten

In Grounds One through Eight and Ten, Petitioner brings a number of ineffective assistance of appellate counsel claims related to a wide range of issues, which are reprinted above. (ECF No. 1, PageID #: 18–53). Petitioner first brought these claims in his application to reopen his appeal, which the Ohio Court of Appeals overruled for untimeliness and rejected on the merits. (ECF No. 6-1, PageID #: 387–95 (application for reopening), 470–78 (ruling)). Petitioner ultimately never successfully filed an appeal on this ruling with the Supreme Court of Ohio. (*See* ECF No. 6-1, PageID #: 11). Following the appellate court's ruling, Petitioner claims he attempted to file a notice of appeal with the Supreme Court of Ohio but failed to comply with Ohio Revised Code § 2503.17 which requires appellants to pay a filing fee or obtain an indigency determination from the court. (ECF No. 1, PageID #: 16). He argues that if he did fail to include the indigency determination in his filing that "it was clearly an inadvertent error." (ECF No. 1, PageID #: 12). However, he claims that his failure to comply with § 2503.17 cannot be the basis of a procedural default because it "cannot be considered an 'adequate and independent' state ground" because the statute unconstitutionally blocks his access to the courts. (ECF No. 1, PageID #: 16–17 (citing *Griffin v. Illinois*, 351 U.S. 12 (1956); *Burns v. Ohio*, 360 U.S. 252 (1959); *Clifton v. Carpenter*, 775 F.3d 760 (6th Cir. 2014))). He argues that because he has not procedurally defaulted, he "is not required to establish cause or prejudice." (ECF No. 1, PageID #: 17).

21

Petitioner also references the various consequences of COVID-19 and its impact on his access to legal resources and assistance. (ECF No. 1, PageID #: 12–13). He argues that COVID-19 caused "long delays in mail and slow procedures" and that he did not have enough time to obtain an indigency determination to include in his notice of appeal and memorandum in support of jurisdiction to the Supreme Court of Ohio. (ECF No. 1, PageID #: 13–14). He contends that "time limits definitely should be considered and adjusted . . . to evaluate if the State Supreme Court Clerk was even within its bounds in this instance to advise me of the unavailability of a delayed appeal process." (ECF No. 1, PageID #: 12–13). Petitioner requests this Court "have my time to be tolled from the time the Clerk of Court of the Ohio Supreme Court received my Notice of Appeal and Memorandum in Support of Jurisdiction . . . so that I may put in an Affidavit of Indigence and resubmit [my appeal] . . . ." (ECF No. 1, PageID #: 15).

Respondents argue that these grounds are procedurally defaulted for two reasons. (ECF No. 6, PageID #: 161–64). First, Respondents argue that Petitioner failed to exhaust these claims by properly appealing the denial of his application to reopen to the Supreme Court of Ohio. (ECF No. 6, PageID #: 146). Second, they argue that he procedurally defaulted because he filed his application for reopening 223 days after the initial appellate judgment, on March 6, 2020. (ECF No. 6, PageID #: 163).[3] Respondents argue that Petitioner has not demonstrated cause or prejudice for either procedural default. (ECF No. 6, PageID #: 161–64 (citing *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004))).

In his traverse, Petitioner again argues that failure to comply with § 2503.17 cannot be an independent and adequate state ground prohibiting habeas petition. (ECF No. 9, PageID

---

[3] As Petitioner procedurally defaulted on these claims by failing to exhaust them with the Supreme Court of Ohio and can no longer do so, the Court need not address the fact that he also procedurally defaulted by filing an untimely application to reopen his appeal in the state court.

#: 994). He cites several cases in support of this argument. (ECF No. 9, PageID #: 994 (citing *Griffin*, 351 U.S. 12; *Burns*, 360 U.S. 252; *Smith v. Bennett*, 365 U.S. 708, 709 (1961); *Clifton*, 775 F.3d 760)). Petitioner again references the various consequences of COVID-19 and its impact on his access to legal resources, arguing that "time limits definitely should be considered and adjusted." (ECF No. 9, PageID #: 989).

The Court agrees with Respondents that these claims are procedurally defaulted. Before seeking federal habeas relief, state prisoners must first exhaust their available state court remedies by fairly presenting all their claims to the state courts. *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005). Ordinarily, the exhaustion requirement is satisfied once the petitioner has fairly presented all his claims to the highest court in the state in which he was convicted, thus giving the state a full and fair opportunity to rule on those claims before the petitioner seeks relief in federal court. *O'Sullivan*, 526 U.S. at 842. This can be done by invoking one full round of the state's established procedures. *Id.*

As noted above, Petitioner failed to properly present these grounds to the Ohio Supreme Court. Accordingly, Petitioner thereby failed to exhaust these claims. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." (citations omitted)). Because under Ohio Appellate Rule 4(A)(1) and Ohio Revised Code § 2953.21(A)(2)(a), Petitioner can no longer bring this argument to state court, his argument is procedurally defaulted. *See Adams*, 2016 WL 6610219, at *2 ("When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." (citing *O'Sullivan*, 526 U.S. at 848)).

Petitioner's argument that his failure to comply with § 2503.17 cannot be considered a procedural default because the statute unconstitutionally denies him access to the courts is misplaced. The cases Petitioner cites in support of this contention are distinguishable from the

instant case since indigency was not a barrier to Petitioner filing his appeal as it was for defendants in *Burns*, *Clifton*, and *Bennett*.[4] In these cases, the defendants were prohibited from appealing their cases or filing a habeas petition for failure to pay a filing fee and did not have the ability to waive their fee through indigency, as Petitioner had. *See Burns* 360 U.S. at 253–55 (Ohio Supreme Court ignored a defendant's affidavit of poverty and motion for leave to proceed in forma pauperis and refused to file his appeal notice since the defendant did not include the filing fee); *Clifton*, 775 F.3d at 762–63 (Tennessee County Chancery Court and Court of Appeals refused to file the defendant's petition and notice of appeal until the defendant paid unpaid court costs); *Bennett*, 365 U.S. at 711 ("The question is therefore clearly posed: Since Iowa does make the writ available to prisoners who have the $4 fee, may it constitutionally preclude its use by those who do not?"). § 2503.17 states that appellants who cannot pay the filing fee may still appeal if they obtain an indigency determination from the Supreme Court of Ohio. *See* O.R.C. § 2503.17. Thus, Petitioner was not barred from appealing because of his indigency, but rather, because he failed to include an indigency determination in his notice of appeal.[5]

"A federal habeas court need not review a procedurally defaulted claim unless the petitioner can show either cause for the default and actual prejudice from the alleged constitutional violation, or that failure to consider the claim would result in a 'fundamental

_____

[4] In his petition and traverse, Petitioner also cited *Griffin v. Illinois*, 351 U.S. 12 (1956), in support of his argument. However, unlike Petitioner's other cited cases, *Griffin* relates to a defendant's ability to obtain a transcript of court proceedings, rather than the instant circumstance of filing an appeal. Thus, it fails to establish his point that failure to comply with § 2503.17 is not a procedural default.

[5] Likewise, Petitioner's request for this Court to toll his time to resubmit an indigency determination to the Supreme Court of Ohio is not well taken. In habeas, a district court cannot reinterpret a state court's application of state law. *See Allen*, 845 F.2d at 614 ("federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition). As Petitioner is asking the Court to overrule the Supreme Court of Ohio's interpretation of state filing deadlines, Petitioner improperly requests the Court to reapply Ohio state law. This request is therefore denied.

24

miscarriage of justice[.]'" *Id.* (quoting *Coleman*, 501 U.S. at 750–51). Here, Petitioner stated in his petition that he "is not required to establish cause or prejudice" for failing to exhaust his claims based on his argument that he did not procedurally default. (ECF No. 1, PageID #: 17). Thus, he has failed to allege any circumstances that constitute cause or prejudice. To the extent he attempts to argue that COVID-19 was the cause for procedural default, he has failed to demonstrate cause[6] and prejudice.[7] Further, Petitioner has not alleged a miscarriage of justice. Thus, he procedurally defaulted on Grounds One through Eight and Ten.

## B. Ground Nine – *Missouri v. Seibert* violation

In Ground Nine, Petitioner argues that the trial court "erred in its determination of Petitioner's ultimate issue raised in the Motion to Suppress—the [*Missouri v. Seibert*] violation." (ECF No. 1, PageID #: 47). Petitioner initially brought this ground on direct appeal, and the Ohio Court of Appeals rejected the claim. (ECF No. 6-1, PageID #: 240–54 (Petitioner's appellate brief), 272–94 (appellate court judgment entry)). He subsequently appealed the claim to the Ohio Supreme Court, which declined to accept jurisdiction of the appeal. (ECF No. 6-1, PageID #: 353–67 (memorandum in support of jurisdiction), 369 (Supreme Court judgment entry declining jurisdiction)).

---

[6] The record clearly demonstrates that COVID-19 did not prohibit Petitioner from filing an appeal to the Supreme Court of Ohio. (*See* ECF No. 1, PageID #: 7–11). Petitioner instead failed to *properly* file the appeal by paying the filing fee or completing the application for indigency, and the Court is unclear how COVID-19 may have impacted Petitioner's ability to properly file his claim. (*See* ECF No. 1, PageID #: 10).

[7] In his traverse, Petitioner argues that his "individual grounds not only have merit singularly, but in a whole, they have a mass effect of prejudice in my trial . . . ." (ECF No. 9, PageID #: 1032). To the extent that this is an attempt to demonstrate prejudice, it fails since Petitioner waived any prejudice argument by failing to address it in his initial petition. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.") (*citing Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)); *see also Braun v. Comm's of Soc. Sec.*, 2021 WL 8016061, at *12 (N.D. Ohio Apr. 7, 2021) ("It is well established that arguments made for the first time in a reply brief are waived.").

Respondents admit that Petitioner exhausted this claim in state court, instead arguing that the ground is meritless. (ECF No. 6, PageID #: 153, 164). They contend that "[t]he Ohio Court of Appeals' adjudication of the Fifth Amendment question presented to the state court does not result in a decision that is contrary to, or involving an unreasonable application of, clearly established Federal law." (ECF No. 6, PageID #: 154). Likewise, "[f]air-minded jurists are not all going to find the state court's adjudication [of the *Seibert* claim] to be unreasonable . . . . and that precludes habeas relief for [G]round [N]ine." (ECF No. 6, PageID #: 168).

In his traverse, Petitioner argues that the trial and appellate courts made an unreasonable determination of the facts by finding that Petitioner understood his *Miranda* rights during his jail interview based on his statement about speaking "off the record." (ECF No. 9, PageID #: 1024–25). He claims he never made a statement about speaking "off the record" and that the Ohio "Court of Appeals and the [trial] judge that presided over the suppression hearing based their decision on an erroneous statement." (ECF No. 9, PageID #: 1025).

In *Seibert,* the Supreme Court held that the defendant's post-*Miranda* statements were inadmissible where the defendant was previously questioned and gave a statement prior to being given *Miranda* warnings. 542 U.S. at 617. Here, the trial court found Petitioner's case distinguishable from *Seibert*. The trial court found as follows:

> *Seibert* is factually distinguishable from the present case, and as Justice Kennedy noted in the plurality decision, the two-step interrogation strategy was found to create a situation that prevented a *Miranda* warning from curing post-Miranda custodial statements due to the nature of the lengthy, exhaustive interrogation that occurred prior to the *Miranda* warning being given. Planned, coordinated and exhaustive interrogation prior to the administration of a *Miranda* warning did not occur in this case.
>
> Although there is no recording of the *Miranda* warning administered to the Defendant, all the evidence and testimony presented during the suppression hearing supported a finding that the *Miranda* warning was effectively communicated to and understood by the Defendant.

(ECF No. 6-1, PageID #: 214–15).

On direct appeal, the Ohio Court of Appeals reviewed this claim and found that the trial court had correctly applied *Seibert*:

> {¶27} In his first assignment of error, appellant argues the trial court erred in overruling his motion to suppress. We disagree.
>
> {¶28} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), *overruled on other grounds*.
>
> {¶29} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See*, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See*, *Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).
>
> {¶30} In the instant case, appellant argues the trial court incorrectly decided the ultimate issue posed by the motion to suppress, to wit, that Evans' purported "two-step interrogation process" thwarted appellant's right to remain silent. Evidence at the suppression hearing established that Evans questioned appellant during three "phases" of the investigation: first, when Evans encountered appellant on Cottage Street; second, when

appellant returned to the residence with Evans while the search warrant was executed; and third, while appellant was held at the Ashland County Jail. Evans Mirandized appellant after "phase one." Appellant stated that he understood. While he waited with Evans at the residence during "phase two," he willingly spoke to the detective and did not invoke his right to remain silent. This conversation occurred approximately 25 minutes after Evans had Mirandized appellant a few blocks away on Cottage Street. The search took several hours, after which appellant was arrested and transported to the Ashland County Jail. On October 31, 2018, Evans spoke with appellant at the Jail ("phase three") without re-Mirandizing him, but appellant was still aware of his rights because he asked Evans about the implications of making a statement "off the record."

{¶31} The trial court ultimately suppressed appellant's statements during "phase one" but found the post-Miranda statements during phases two and three admissible.

{¶32} Appellant now argues that all of his statements should have been excluded because they were an extension of his conversation with Evans in "phase one." The record established, though, "that the Miranda warning was effectively communicated to and understood by [appellant]." Judgment Entry, 2. The Fifth Amendment to the United States Constitution guarantees that " '[n]o person * * * shall be compelled in any criminal case to be a witness against himself,' and that 'the accused shall * * * have the Assistance of Counsel.' " (Ellipses sic.) *Miranda v. Arizona*, 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In light of the inherent coercion involved in custodial interrogation, Miranda established "a set of prophylactic measures" to safeguard the constitutional privilege against self-incrimination. *Id.* In broad terms, Miranda held that the state may not use a defendant's statements from custodial interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* at 444, 86 S.Ct. 1602. Prior to questioning, the police must warn the suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* The Supreme Court recognized the importance of a suspect's "real understanding" of his rights and his intelligent decision whether to exercise them. *Id.* at 469, 86 S.Ct. 1602.

{¶33} Miranda conditioned the admissibility at trial of any custodial confession on warning a suspect of his rights: failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. *Missouri v. Seibert*, 542 U.S. 600, 608, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).

{¶34} Appellant argues Evans' successive questioning constitutes a "*Seibert* violation." In *Seibert*, supra, the United States Supreme Court addressed the issue of whether the technique of successive interrogations, the first before Miranda warnings and the other(s) after, violated a defendant's Miranda rights. The suspect was taken to the police station for questioning after a fire at her home resulted in the death of one of the residents. She was questioned about the incident without first being provided her Miranda warnings and she made incriminating statements. The suspect was then issued her Miranda warnings and was confronted with the statements she had made before she was provided such warnings; she then confirmed her previous statements.

{¶35} The Court was troubled by the adherence to litigating the question of voluntariness where Miranda warnings were not given until after law enforcement had obtained a confession. 542 U.S. at 609, 124 S.Ct. 2601. The Court held that the following factors should be considered in determining whether Miranda warnings delivered midstream could be effective enough to accomplish their object: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 615, 124 S.Ct. 2601; *see*, *State v. Bonnell*, 5th Dist. Delaware No. 07 CAA 01 0006, 2008-Ohio-28, 2008 WL 77571, ¶ 37; *State v. Furniss*, 5th Dist. Fairfield No. 12-CA-41, 2013-Ohio-2064, 2013 WL 2243964, ¶ 22.

{¶36} As noted by the Ohio Supreme Court in *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, "*Seibert* points out that in 'question first' scenarios when the circumstances of the given case show that the Miranda warning could not reasonably be found effective, the post warning statements are inadmissible because 'the earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning.' *Id.* at 612, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643, fn. 4." *Farris*, ¶ 21.

{¶37} We find no such "single, unwarned sequence" in the instant case. Phase one of Evans' questioning of appellant took approximately 10 minutes at the side of the road. Statements made during that phase, pre-Miranda warnings, were suppressed. The trial court further found that Seibert is inapplicable to appellant's statements in phases two and three because there was no lengthy, exhaustive interrogation prior to Evans' Miranda warning and we agree. This case is factually distinguishable from Seibert and its rationale does not apply.

{¶38} Upon our review of the record, we find that the trial court was correct in granting appellant's motion to suppress his statements in phase one, and correct in overruling the motion as to phases two and three. Given the length of time and difference of places between the two statements, the connection between the two statements "was sufficiently attenuated as to dissipate the taint of his suppressed statements." *Furniss*, supra, 2013-Ohio-2064, at ¶ 22. We agree with the trial court that the instant case is distinguishable from Seibert in that the first round of interrogation was neither complete nor detailed, nor did the phases overlap to the extent that they might be deemed "continuous." The evidence also indicates that during phase three at the jail, appellant remained sufficiently aware of his rights to the extent that he suggested making a statement "off the record."

{¶39} We conclude, therefore, that the trial court did not err in overruling the motion to suppress in part and granting it in part. Appellant's first assignment of error is overruled.

*Redden*, 2020-Ohio-878, at ¶¶ 27–39.

Under AEDPA, this Court must find the Ohio appellate court's application of *Seibert* or interpretation of the facts unreasonable to grant the instant petition. Petitioner has challenged the trial court's application of *Seibert* in Ground Nine, however, he does not argue how the above-quoted state appellate court's determination was contrary to or an unreasonable application of *Seibert*. Furthermore, the record demonstrates that the appellate court reasonably distinguished *Seibert* from the instant case. Petitioner has therefore failed to overcome AEDPA's highly deferential standard applicable to the Court's review of his *Seibert* claim. He has not shown that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 101–04). In fact, this Court's review indicates that the appellate court's factual review was supported by the record and its legal analysis followed the dictates of *Seibert*.

Although Petitioner argues in his traverse that the trial and appellate courts made unreasonable determinations of fact, he failed to raise this argument in his petition, and has

therefore waived the argument. *See Sanborn*, 629 F.3d at 579 ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.") (citing *Am. Trim, L.L.C.*, 383 F.3d at 477). However, even if the Court considered this argument, it still fails. The specific fact Petitioner cites as unreasonable was the court's reference to Petitioner's comment about being "off the record" during his jail interview. (ECF No. 9, PageID #: 1024–25). But this comment was one of several reasons the court found that *Seibert* was distinguishable from the instant case. *See Redden*, 2020-Ohio-878, at ¶¶ 37–38 (listing several distinguishing facts including the lack of an exhaustive pre-*Miranda* interrogation, a significant amount of time between Petitioner's interactions with law enforcement, and different locations for each interaction). Thus, even if this specific fact was an unreasonable interpretation of the record, the court's overall conclusion would not be highly unreasonable, since its holding was supported by several other facts, which Petitioner has not challenged as unreasonable. Accordingly, this claim should be dismissed as meritless.

## VII.    Certificate of Appealability

### A.  Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.  Analysis

31

Petitioner's grounds for relief are procedurally defaulted or meritless. If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VIII.   Recommendation

Petitioner has presented only procedurally defaulted or meritless claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: January 6, 2023

_s/ Carmen E. Henderson_
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).